In the Matter of the Claim of FLORENCE GARNER, Respondent, against ALLEGHENY LUDLUM STEEL CORPORATION, Appellant, and SPECIAL DISABILITY FUND UNDER SECTION 15-8, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, July 31, 1958.

*Benedict T. Mangano* for appellant.

*Henry S. Bayly* for claimant-respondent.

*John M. Cullen* for Special Disability Fund, respondent.

*Louis J. Lefkowitz, Attorney-General* (*Roy Wiedersum* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

*Per Curiam.* On January 30, 1953 the clothing of the decedent caught fire from a welding spark in the course of employment and he suffered '' quite extensive '' second and third degree burns on the calf and thigh of the left leg. He was admitted to a hospital on February 2 for the treatment of the burns and he remained in the hospital until his death on March 20.

The Workmen's Compensation Board has found that there was a causal association between the burns and his death the following month; the appellant argues that the finding of such association is not supported by substantial evidence.

Decedent's death was caused by several conditions, among them arteriosclerotic heart disease, which are not demonstrated to have been adversely affected by the burns; but claimant's theory of association between the burns and the death is that the burns set up an infection which was transmitted to other parts of the body, especially the kidneys, and that the diseased condition of the kidneys was a factor in the causation of death and the transmission of infection from the burns adversely affected the kidneys.

There is also some opinion evidence that a thrombophlebitis of the left common and external iliac, and left femoral veins, the same leg and the same side of the body as the burns, which was one of the causes of death, was affected or aggravated by the burns.

The important area of medical controversy in the case is whether there was an infection from the burns which was transmitted through the blood stream to the kidneys. On this point the physician who performed the autopsy; and the pathologist who made microscopic examination of the kidney and blood vessel tissues were of opinion that the burns had no connection with the conditions which caused the decedent's death; and two other physicians reached the same conclusion based on a study of the autopsy reports and the hospital records.

Important elements which entered into these medical opinions excluding a relationship with the burns were that the hospital record did not show the kind of a temperature course which would be associated with the type of acute infective process expected to accompany transmission through the blood stream of infection from the burns; that the burns were demonstrated in the hospital reports to be healing well without evidence of infection; that hospital urine tests did not show the kind of findings that would accompany such infection in the kidneys.

Nevertheless a physician who actually examined and treated the decedent in the hospital noted that he " had a septic temperature, with an open wound " and testified that his actual observations and the course of treatment which followed led him to believe a septic process developed as a result of the burns. Other physicians who looked at the hospital chart expressed the view that the temperature shown was not high enough or irregular enough to suggest such a process; but it is manifest by examination of these charts which are before

us that from the time of his admission and through most of the period in the hospital decedent had a temperature.

The final diagnosis on the autopsy report showed as one of the causes of death " septicemia " and the report further stated that the kidneys showed " multiple abscess " and " uremia ". Two other physicians testified for the claimant, one who had examined decedent in the hospital and the other a pathologist, that in their opinion there was a direct association between the burns and the death and that this opinion was consistent with the autopsy report.

Although appellant argues that these opinions were based on erroneous hypotheses, we think the hypotheses are not wrong because they may differ from the way the appellant argues the true facts to be assumed were, and that the hypotheses were sufficiently accurate to give foundation to the opinions expressed. The physician who had actually examined decedent based his views in part on his own observation.

In view of this highly controverted medical question the Referee sent the file to an impartial specialist. This physician specializes in surgery; is a professor in clinical surgery in New York Medical College and an instructor in surgery in Cornell University Medical College. On February 28, 1955 he reported that " it is my opinion that there is a direct causal relationship between the accident which caused the burns of this claimant's legs, and his death."

Appellant objected to the receipt in evidence of this report because the physician did not demonstrate in the written opinion the exact basis for his conclusions; but this is an entirely proper way for such a specialist to make such a report to the board, if the employer has adequate opportunity to cross-examine him.

The appellant had such opportunity; the impartial specialist was called and was cross-examined by appellant to the extent of 25 printed pages in the record on the reasons which formed the bases of his opinion. It can scarcely be argued, therefore, on any fair reading of the record, that this is a bare opinion without demonstration of the reasons which underlie it.

In the light of additional medical testimony offered by the appellant based, among other things, on the hospital reports which appellant argues the impartial specialist did not have available and did not consider in reaching his opinion, the board's file with that additional medical testimony was again referred to the impartial specialist, who on April 9, 1956 reported that after considering this additional proof he adhered to his prior opinion of February 28, 1955.

The impartial specialist was again called as a witness; appellant examined further into his general professional qualifications, was allowed further cross-examination without restriction, but chose to ask no question as to whether, in reviewing the additional medical opinion which was plainly and by repeated reference based in part on the hospital record, and to what extent the impartial specialist examined or took into consideration the hospital record.

No question was addressed to the witness by the appellant on the subject of his further opinion and we treat as unwarranted the argument pursued in this court on appeal that the impartial specialist had not actually seen or considered the hospital record when opportunity to cross-examine him on that subject, and with the knowledge that the appellant's medical witnesses had based their opinion on the hospital record, was not accepted by appellant's counsel and the witness excused by him without any question addressed to him on the point so extensively argued here.

The witness expressed the firm opinion that the final diagnosis on autopsy showing "septicemia" as one of the causes of death, gave support for his judgment that there was an association between this and the burns. He stated this succinctly: "from the infections in the burn and bacteria got into the blood stream and were carried throughout the body. Some of the bacteria landed in the kidney and caused abscesses in the kidney". The award is thus fully supported by substantial medical evidence.

The award should be affirmed, with costs to the Workmen's Compensation Board.

BERGAN, J. P., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Award affirmed, with costs to the Workmen's Compensation Board.